WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gina L Samuels, | No. CV-12-01665-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's application for supplemental security income under Title XVI of the Social Security Act.

## I. PROCEDURAL BACKGROUND

In February of 2009, Plaintiff Gina Samuels filed Title II and Title XVI applications for Disability Insurance Benefits and Supplemental Security Income benefits alleging her disability began on February 19, 2009. (TR 137-150). Plaintiff claims disability due to fibromyalgia, rheumatoid arthritis, obesity, and depression. (TR 22; Doc. 12). Both applications were denied, initially on April 2, 2009, and upon reconsideration on July 23, 2009. (TR 73-79; 80-86). On March 14, 2011, Plaintiff appeared and testified at a hearing before an ALJ who issued an unfavorable decision on March 24, 2011. (TR 20, 30). On June 7, 2012, the Appeals Council denied review of the ALJ's unfavorable decision on Plaintiff's claim. (TR 1-3).

On August 6, 2012, Plaintiff filed her Complaint for Judicial Review of the

Administrative Determination of her claim. (Doc. 1). Plaintiff argues that the Court should vacate the Administrative Law Decision because: (1) the ALJ failed to properly weigh reported symptoms; (2) the ALJ failed to properly weigh medical source opinion; and (3) the ALJ failed to properly examine vocational expert ("VE") testimony. (Doc. 12 at 13-27).

## II. DISABILITY

### A. Standard of Review

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Id.* If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *Id.* Additionally, the ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### B. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is "under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### C. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick,* 157 F.3d at 721.

The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the

1 regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is found disabled without
2 considering the claimant's age, education, and work experience. *Id.* § 404.1520(d).

3    4. At step four, the ALJ determines whether, despite the impairments, the
4 claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this
5 determination, the ALJ compares its "Residual Functional Capacity ("RFC") assessment .
6 . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §
7 404.1520(f). If the claimant can still perform the kind of work the claimant previously
8 did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

9    5. At the final step, the ALJ determines whether the claimant "can make an
10 adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v).
11 In making this determination, the ALJ considers the claimant's residual functional
12 capacity, together with vocational factors (age, education, and work experience). *Id.* §
13 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not
14 disabled. If the claimant cannot perform other work, he will be found disabled. As
15 previously noted, the ALJ has the burden of proving the claimant can perform other
16 substantial gainful work that exists in the national economy. *Reddick,* 157 F.3d at 721.

### D. The ALJ's Evaluation Under the Five-Step Process

In steps 1 and 2, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since February 19, 2009; and (2) has the following severe impairments: rheumatoid arthritis, fibromyalgia, depression, and obesity. (TR 22). In step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations. (TR 23). The ALJ determined Plaintiff's RFC as the capacity to perform less than the full range of sedentary work, limited to low stress work with only occasional decision-making. (TR 24). As a result, the ALJ found at step 4 that Plaintiff is unable to perform any past relevant work as a front desk clerk, nurse assistant, or help desk clerk. (TR 28). At step 5, however, relying on the testimony of a VE, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to

1 other work and performing jobs that exist in significant numbers in the national economy
2 such as a document preparation clerk, telephone quotation clerk, and call out operator.
3 (TR 29). Thus, the ALJ found that Plaintiff was not disabled as defined in the Social
4 Security Act. (TR 30).

### III. ANALYSIS

Plaintiff, as stated above, argues that the ALJ's opinion should be vacated because (1) the ALJ failed to properly weigh reported symptoms; (2) the ALJ failed to properly weigh medical source opinion; and (3) the ALJ failed to properly weigh VE testimony. (Doc. 12). The Court will address each of Plaintiff's arguments in turn.

### A. Whether the ALJ Properly Weighed Subjective Complaint Reporting

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))

Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets

- 5 -

>     [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014).

Factors that the ALJ should consider when making such credibility determinations include: (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the Plaintiff takes medication or undergoes other treatment for the symptoms; and (3) whether the alleged symptoms are consistent with the medical evidence. *Lingenfelter*, 504 F.3d at 1040; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 346; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989; SSR 96-7p at 3-4 (requiring ALJs to consider "all of the evidence in the case record" in assessing a plaintiff's subjective pain and symptom testimony, including: the "individual's daily activities;" the "location, duration, frequency, and intensity of the pain or symptoms," "[f]actors that precipitate and aggravate the symptoms," the "type, dosage, effectiveness, and side effects" of any medications, any other treatment or measures used for relief; functional restrictions; and any other relevant factors).

In this case, there is no question that the ALJ found that there was medical evidence of underlying impairments that would be reasonably likely to cause pain. *See* TR 25 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.").

Here, the ALJ relied not only on the objective medical evidence in finding the Plaintiff's subjective complaints were not fully credible, but also relied upon the Plaintiff's daily activities. (TR 26). The objective medical evidence revealed only trace

swellings of the fingers in the IP joints, minimal medial compartment joint space narrowing, and mild disc narrowing at L4-5, L5-S1, and mild grade I anterior spondyloisthesis at L5-S1.  (TR 354-56; 388).  The objective medical evidence further "revealed compression tenderness about the MCP and PIP joints but no additional redness, heat, or swelling was noted in those areas."  (TR 367).  Additionally, "X-rays of the sacroiliac joints, spine, ankles, and hips in November 2009 revealed unremarkable sacroiliac joints, straightening of the normal cervical lordosis, and elongated transverse process, with no instability on the flexion and extension, significant erosive changes in the left ankle or foot, with only mild hallux valgus deformity at the 1st metatarsophalangeal joint, and unremarkable bilateral hip findings with no erosive changes."  (TR 389-399).

The ALJ also relied upon objective medical evidence that showed medications and treatment were relatively effective.  According to Valley Arthritis records, treatment for RA (rheumatoid arthritis) was better on the azathioprine.  (TR 441-48).  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

Further, the ALJ considered evidence of daily activities.  Such consideration is not improper.  *See Fair,* 885 F.2d at 603 ("More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").  The ALJ took into account Plaintiff's daily activities of preparing meals for herself and her children, washing the dishes, walking her children to the park, grocery shopping every two weeks, vacuuming, and caring for her two children.  (TR 191-94).  Plaintiff claims the ALJ did not consider the daily activities with enough precision because Plaintiff

occasionally needs help with cooking, must take breaks while washing the dishes, no longer walks her children to the park, tries to take children to a friend's house, may need assistance putting away groceries, occasionally needs to use an electric cart at the grocery store, and has the need to lie down at different times throughout the day. (Doc. 12 at 15-16). The Commissioner argues that these activities, with the proper limitations, are still not disabling limitations for the purpose of determining eligibility for disability benefits. (Doc. 18 at 19). *See* 20 C.F.R. § 404.1529(c)(4). Although the ALJ did not recount every detail of Plaintiff's self-reported symptoms, it is clear from the decision that he considered this information.

Additionally, Plaintiff argues the ALJ used circular reasoning when he stated the Plaintiff's testimony regarding the severity of symptoms is less credible because it is inconsistent with the RFC. (Doc. 12 at 21). The ALJ's decision states the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above [RFC]." (TR 25). However, the ALJ also considered that the objective medical evidence did not support Plaintiff's subjective complaints. (TR 26). "Although the statement at the conclusion of the ALJ's RFC discussion contains what could be considered improper circular reasoning if that statement were considered in isolation, the record reflects that before the ALJ made that statement, he identified the portions of Plaintiff's testimony that he deemed not credible." *Houston v. Colvin*, 2013 WL 6252425, at *11 (D. Ariz. Dec. 4, 2013). Here, the record reflects that the ALJ considered Plaintiff's testimony and properly based his credibility determination upon all of the record evidence.

Plaintiff also argues one significant reason the ALJ discounted Plaintiff's credibility was because she was a single mother who lived with her children. Plaintiff contends the ALJ mischaracterized the record because she sometimes needs assistance for tasks like grocery shopping and preparing meals. The ALJ's failure to recount every detail of Plaintiff's testimony does not automatically indicate his failure to consider that testimony.

1     The ALJ's report also noted Plaintiff has better mental capacity than she stated in
2 the testimony and written statements.  Plaintiff claims this statement is not supported by
3 substantial evidence of record and also that the ALJ may not rely upon Plaintiff's failure
4 to seek mental health treatment as a partial basis for credibility determination.  "The ALJ
5 is permitted to consider lack of treatment in his credibility determination."  *Burch v.*
6 *Bamhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Further, the ALJ incorporated Plaintiff's
7 mental health limitations in limiting Plaintiff to "low stress work, with only occasional
8 decision-making and occasional changes in the work setting." (TR 24).

9     Finally, Plaintiff contends that the ALJ cherry-picked evidence as well as
10 misstated the record.  (Doc. 12 at 20).  The ALJ stated Plaintiff has no hand or wrist
11 abnormalities, yet Plaintiff cites medical records that document swollen fingers,
12 tenosynovitis in the dorsum of the hands, pain on range of motion testing and blood tests
13 highly consistent with seropositive rheumatoid arthritis.  Plaintiff then claims the ALJ
14 misstated the record to such a degree that the errors detract from the weighing of reported
15 symptoms.  (*Id.*).  Plaintiff specifically cites the ALJ as saying consulting examiner Dr.
16 Cunningham observed Plaintiff walking with a consistent gait when, in fact, Dr.
17 Cunningham's report states she does not have a consistent gait.  (TR 27, 348).  Plaintiff
18 provides another example, quoting the ALJ's decision as saying, "there is minimal
19 evidence of actual treatment for fibromyalgia" and that no specific treatment for
20 fibromyalgia is indicated in the record when Plaintiff's treating rheumatologist noted that
21 Plaintiff has fibrositis pattern trigger point tenderness at the soft tissue areas of the upper
22 and lower extremities and was prescribed Lyrica.  Plaintiff is correct in asserting that the
23 ALJ's report does not fully and accurately reflect the entire record and therefore the ALJ
24 erred.

25    Because the Court concludes that the ALJ erred in making his credibility finding,
26 the issue now becomes whether the error was harmless.  *See Batson v. Comm'r of Soc.*
27 *Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless error standard).
28 If there remains "substantial evidence supporting the ALJ's conclusions on . . .

credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," error is harmless and does not warrant reversal. *Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1197); *see also Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination"). The Court is not required to consider whether the ALJ would have made a different decision. *Stout*, 454 F.3d at 1054-55.

Here, the ALJ's adverse credibility finding remains valid despite the error identified above. The error does not erase the discrepancy between Plaintiff's claims and the objective medical evidence. The ALJ found that Plaintiff's self-reported activities undermined Plaintiff's credibility and suggested "better physical and mental capacities than she has stated in the testimony and written statements." (TR 26). Based on the evidence reviewed above, the Court concludes Plaintiff's reported symptoms and activities adequately support the ALJs negative credibility finding. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). Furthermore, the ALJ relied on several factors when determining Plaintiff's credibility and did not rely on one factor alone. Based on the specific, clear, and convincing reasons for discounting Plaintiff's testimony and the substantial evidence supporting the ALJ's determination, the Court concludes the ALJ properly weighed Plaintiff's subjective complaints and any error was harmless.

### B. Whether the ALJ Properly Weighed Medical Source Opinion

Plaintiff argues that the ALJ did not give proper weight to the opinions of her treating professionals. (Doc. 12 at 21). "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle,* 533 F.3d 1155, 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is entitled to controlling weight when it is "well-supported

by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631.

Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn,* 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id*. (citing *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1)

1 the length of the treatment relationship and the frequency of examination; (2) the nature
2 and extent of the treatment relationship; (3) the extent to which the opinion is supported
3 by relevant medical evidence; (4) the opinion's consistency with the record as a whole;
4 and (5) whether the physician is a specialist giving an opinion within his specialty. 20
5 C.F.R. § 404.1527(c).

6 If a treating physician's opinion is not contradicted by the opinion of another
7 physician, then the ALJ may discount the treating physician's opinion only for "clear and
8 convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a
9 treating physician's opinion is contradicted by another physician's opinion, then the ALJ
10 may reject the treating physician's opinion if there are "specific and legitimate reasons
11 that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at
12 830).

13 Finally, "[a]lthough a treating physician's opinion is generally afforded the
14 greatest weight in disability cases, it is not binding on an ALJ with respect to the
15 existence of an impairment or the ultimate determination of disability." *Tonapetyan v.*
16 *Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to
17 whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. §
18 404.1527(d)(1). Thus, even if a treating physician's opinion is controlling, it does not
19 necessarily lead to a finding of disability. *See Magallanes*, 881 F.2d 747, 753 (rejecting a
20 treating physician's opinion of disability).

21 Plaintiff argues the ALJ erred in failing to properly consider the opinions of Dr.
22 Soloman and Katherine Lijoi, PA-C, two of the Plaintiff's treating professionals. (Doc.
23 12 at 21-25). Dr. Soloman submitted a medical assessment of ability in March 2011 and
24 stated in an 8 hour work day, Plaintiff can sit for less than 2 hours a day, stand for less
25 than 2 hours a day, lift less than 10 pounds and carry less than 10 pounds. (TR 505). Dr.
26 Soloman also noted Plaintiff's only impairment or diagnosis affecting the ability to work
27 is rheumatoid arthritis. (*Id.*). Lijoi constructed in medical assessment of ability in
28 September 2009 stating Plaintiff could sit for 2 hours, stand/walk for less than 2 hours,

lift less than 10 pounds and carry less than 10 pounds. (TR 383). Lijoi noted joint pain, stiffness, swelling and rheumatoid arthritis all affected Plaintiff's ability to function. (*Id.*).

Plaintiff argues the ALJ did not specify which of Dr. Soloman's restrictions were not supported by clinical or radiological findings. (Doc. 12 at 22). In response, the Commissioner argues the ALJ properly discounted Dr. Soloman's opinion because both Dr. Soloman and Lijoi's opinions are provided in the form of a conclusory two-page assessment that included no assessment or analysis explaining the basis for their findings. (Doc. 18 at 14). The ALJ stated in his opinion that he gave very little weight to the opinions of both treating sources because, among other things, the restrictions were not supported by the objective findings of the musculoskeletal examinations, MRI reports, x-rays, and seemed to heavily rely on Plaintiff's subjective complaints, rather than actual findings. (TR 28).

The Court finds that the ALJ based his decision on substantial evidence. Plaintiff's treating professionals filled out conclusory assessments and, as the ALJ stated, objective medical evidence stands in contrast to the assessments. The ALJ explained that he gave significant weight to the state agency examiner because "the opinions are consistent with objective medical evidence of record, especially considering Plaintiff's multiple joint pain symptoms, slow gait, and limited lumbar range of motion due to pain." (TR 28). Such statements constitute specific and legitimate reasons for discounting Dr. Soloman's report.

Plaintiff also argues that the ALJ improperly discounted the opinion of a nurse practitioner who treated Plaintiff. (Doc. 12 at 24). Katherine Lijoi, PA-C, opined that Plaintiff "could perform less than sedentary exertion due to joint pain, stiffness, swelling, and rheumatoid arthritis." (TR 383). She also noted "pain and fatigue" further limited Plaintiff's ability to sustain work activity 8 hours a day, 5 days a week. (TR 383-84). The ALJ discounted the nurse practitioner's opinion for the following reasons: 1) a nurse practitioner is not an "acceptable medical source" under the regulations, 2) the

1   environmental restrictions were not supported by the objective findings of the
2   musculoskeletal examinations, MRI reports, and x-rays, and 3) the findings seem to rely
3   heavily on Plaintiff's subjective complaints as opposed to actual findings.  (TR 28).

4   Nurse practitioners are defined as "other sources" in 20 C.F.R. § 404.1513(d)(1)
5   and are not entitled to the same deference as other types of providers.  *Molina*, 674 F.3d
6   at 1111-1112 (citing 20 C.F.R. § 404.1527; SSR 06–03p). "The ALJ may discount
7   testimony from these other sources if the ALJ gives reasons germane to each witness for
8   doing so." *Id.* (internal quotations and citations omitted).

9   Plaintiff admits that Lijoi is not a medically acceptable treating source, but argues
10  that the ALJ's reasons for discounting Lijoi's opinions were not supported by the record.
11  In response, the Commissioner argues that the ALJ's discounting was supported by the
12  record because Lijoi's two-page medical assessment was conclusory and contradicted by
13  objective medical findings.  The Commissioner asserts that an opinion is properly
14  discounted where it is conclusory or unsupported by medical evidence and, because the
15  ALJ found Plaintiff's subjective reports not to be credible, it was proper to use that
16  evaluation when evaluating Lijoi's opinions, which were based on Plaintiff's subjective
17  complaints.

18  Indeed, the ALJ rejected nurse practitioner Lijoi's conclusions because those
19  opinions were supported by few specific findings and based on Plaintiff's subjective
20  complaints rather than objective medical evidence.  These reasons are germane because a
21  medical opinion may be discounted where it is conclusory and not supported by objective
22  medical evidence.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

23  Thus, the court finds the ALJ articulated specific and legitimate reasons for
24  discounting the assessments of Dr. Soloman and Katherine Lijoi and he relied on
25  substantial evidence when arriving at such conclusions.

26  **C.   Whether the ALJ failed to properly weigh VE testimony.**

27  The Commissioner bears the step-five burden of establishing that the claimant can
28  perform work outside their work history that "exists in significant numbers in the national

- 14 -

economy." 20 C.F.R. § 404.1560(c)(2). Plaintiff asserts the ALJ improperly relied upon VE testimony that stated Plaintiff was able to perform jobs requiring reasoning level 3. More specifically, Plaintiff contends a conflict existed between the VE's testimony and the definition of jobs contained in the Department of Labor's Dictionary of Occupational Titles ("DOT") and the ALJ erred by failing to elicit an explanation of the difference. The ALJ asked the VE a series of hypothetical questions that sought to determine whether an individual of the Plaintiff's age, education, vocational background, and RFC could perform Plaintiff's past work. The VE's response included the following: "unskilled jobs are simple, routine, and repetitive, and so there would not be a – there would not be high stress and decision-making and all sorts of things." (Doc. 12 at 26).

The ALJ limited Plaintiff to "low stress work" with "occasional decision-making and occasional changes in work setting." (TR 24). The DOT definition of jobs requiring a reasoning level 3 is the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or from standardized form." U.S. Dep't of Labor, Dictionary of Occupational Titles app. C (4th ed. 1991), *available at* 1991 WL 688702. Plaintiff contends these definitions vary such that reliance by the ALJ constitutes legal error.

SSR 00-4p provides that there is an affirmative duty on the ALJ to identify and obtain a reasonable explanation for any conflicts between the VE testimony and the DOT. 2000 WL 1898704 (Dec. 4, 2000). First, the ALJ must determine whether a conflict exists. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). If it does, the ALJ must then elicit an explanation and then determine if the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.*

Here, the ALJ correctly inquired into any apparent conflicts and the VE responded none existed. (TR 65). Consequently, the issue is then whether the conflict was apparent such that the ALJ should have been aware of the unresolved conflict between the VE evidence and DOT. Even though Plaintiff's counsel never inquired into the conflict at

the time of the hearing, Plaintiff now argues that the discrepancies between the DOT definitions and the VE testimony were obvious such that the ALJ should have inquired.

Plaintiff also argues the phrasing used by the ALJ and VE remains more analogous to a reasoning level 1.  The DOT defines reasoning level 1 as the ability to "apply commonsense understanding to carry out simple one- or two-step instructions and to deal with standardized situations with occasional or no variables in or from these situations.  Dictionary of Occupational Titles app. C.  The DOT describes the following jobs as requiring only a reasoning level of 1: Counting cows as they come off a truck; pasting labels on filled whiskey bottles; and tapping the lid of cans with a stick.  *See* Dictionary of Occupational Titles at 931, 936, 938.

From this testimony, Plaintiff contends the ALJ should have recognized and inquired into the discrepancy between that testimony and the DOT.   The Commissioner argues that the record should be viewed as a whole when evaluating a challenge based upon an alleged conflict pertaining to reasoning levels.  (Doc. 18 at 22-23).  The Commissioner specifically states Plaintiff's education, past relevant work, and formal or informal training should all be considered when addressing the reasoning level.  (Doc. 18 at 23) (citing *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)).

The court is not persuaded by Plaintiff's argument that the ALJ erred by failing to elicit an explanation from the VE regarding the alleged conflict between the VE's testimony and the definition of jobs contained in the DOT.  Much like the Seventh Circuit, the Court views the calculation of a reasoning level to include educational background and cognitive abilities.  *Terry*, 580 F.3d at 478.  Plaintiff's previous work was of a higher difficulty level, showing she once had the capacity to perform more than is required for jobs with a reasoning of level 3.

Moreover, the alleged conflict is not apparent enough to trigger the affirmative duty set forth in SSR 00-4p because the ALJ need only ask the VE if the evidence he or she has provided conflicts with the information provided in the DOT and, if so, whether a reasonable explanation for the conflict exists.  Here, the ALJ properly asked whether the

VE's testimony conflicted with the DOT and was assured it did not. The Court finds the alleged conflict was not apparent enough to trigger the duty to inquire and the finding of reasoning level 3 was supported by the record as a whole.

### IV. CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 21st day of March, 2014.

James A. Teilborg
Senior United States District Judge